IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SAYBROOK TAX EXEMPT INVESTORS, LLC
and LDF ACQUISITION, LLC,

                    Plaintiffs,                   OPINION AND ORDER

    v.

                                             12-cv-255-wmc

LAKE OF THE TORCHES ECONOMIC
DEVELOPMENT CORPORATION; STIFEL
NICOLAUS & COMPANY, INC.; STIFEL
FINANCIAL CORP.; and GODFREY & KAHN,
S.C.,

                    Defendants.

---

Plaintiffs here purchased taxable gaming revenue bonds and seek to either enforce payment of the bonds or to obtain other legal and equitable relief from defendants -- the tribal corporation that issued the bonds, an intermediary brokerage firm that sold the bonds, and the law firm that opined on the legality of the bonds at the time of the sale. While the issuing tribal corporation, defendant Lake of the Torches Economic Development Corporation, has arguably waived its sovereign immunity to suit in state court, the contractual waiver is conditional, triggered only "in the event . . . [the Federal District Court for the Western District of Wisconsin] fails to exercise jurisdiction." (*See* Bond Specimen, dkt. #1, ex. A, p. 5.)  With the admitted aim of triggering this waiver,

plaintiffs took the unusual step of filing suit in this court mainly to establish that it lacks jurisdiction to hear their case.[1]

At the outset of proceedings, therefore, this court agreed to conduct a threshold jurisdictional analysis.  Having done so, the court now finds that it lacks federal question jurisdiction, but requires more information to determine if diversity jurisdiction nonetheless exists.  Before issuing a final ruling on this court's jurisdiction, therefore, plaintiffs will be required to provide additional proof regarding the citizenship of plaintiff LDF Acquisition, LLC.

BACKGROUND[2]

Defendant Lake of the Torches Economic Development Corporation ("Lake of the Torches") is a tribal corporation wholly owned by the Lac du Flambeau Band of Lake Superior Chippewa Indians ("the tribe"), an Indian tribe organized under Section 16 of the Indian Reorganization Act of 1934 (25 U.S.C. §§ 461 *et seq.*) and recognized by the federal government.  In January 2008, Lake of the Torches issued $50 million in bonds and sold them all to a brokerage firm, Stifel, Nicolaus & Company, Inc. ("Stifel

---

[1]  Under different circumstances, deliberately filing a meritless lawsuit (including filing in a forum that plainly lacks jurisdiction) might warrant sanctions.  *Wojan v. Gen. Motors Corp.*, 851 F.2d 969, 975 (7th Cir. 1988).  But given the wording of Lake of the Torches' waiver of sovereign immunity -- which arguably forces plaintiffs to advance a straw-man lawsuit in federal court in order to obtain jurisdiction in state court, particularly where the parties' state court action was stayed pending the outcome of this lawsuit -- plaintiffs' conduct is not in bad faith, although an action for declaratory judgment would seem a more straightforward vehicle.

[2] For the purposes of this motion, the court relies on the following essentially-undisputed factual representations of the parties.

Nicolaus"), which resold them to plaintiff LDF Acquisition, LLC ("LDF").   Plaintiff

Saybrook Tax Exempt Investors, LLC ("Saybrook") is a member of, and the manager of,

LDF.   Defendant Godfrey and Kahn, S.C., a law firm, advised the parties on the

transaction.

As part of the bond issue, Lake of the Torches executed multiple, written

contracts, including the bonds themselves (which constitute a promise to pay back the

money) and a corresponding Trust Indenture Agreement (which provided the means by

which Lake of the Torches would repay its debt).   Wells Fargo Bank was designated as

the trustee under the Indenture.

When Lake of the Torches allegedly repudiated the bonds and failed to comply

with the Indenture, Wells Fargo Bank brought suit in this court to enforce the Indenture.

Lake of the Torches responded with the affirmative defense of sovereign immunity.

When Wells Fargo protested that the Indenture had waived sovereign immunity, Lake of

the Torches replied that the Indenture was an unapproved "management contract" that

violated the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 ("IGRA") and its

implementing regulations, making it void and unenforceable.

Judge Rudolph Randa, sitting by designation in the Western District of

Wisconsin, agreed that the Indenture was void under IGRA and his ruling was affirmed

by the Seventh Circuit Court of Appeals.  *Wells Fargo Bank, N.A. v. Lake of Torches Econ.*

*Dev. Corp.*, 09-CV-768, 2010 WL 1687877 (W.D. Wis. Apr. 23, 2010), *aff'd in part sub*

*nom. Wells Fargo Bank, Nat. Ass'n v. Lake of the Torches Econ. Dev. Corp.*, 658 F.3d 684 (7th

Cir. 2011).   The Seventh Circuit Court of Appeals, however, reversed Judge Randa's

determination that there could be no alternative relief through asserting equitable and legal claims arising out of the other bond offering documents, including the bonds themselves. *Wells Fargo Bank, Nat. Ass'n v. Lake of the Torches Econ. Dev. Corp.*, 658 F.3d 684, 700-01 (7th Cir. 2011). The Seventh Circuit explained that the bond purchasers could bring claims based on the bonds, as well as any similar offering documents that did not independently meet the definition of a "management contract," but the bond purchasers would first have to overcome Lake of the Torches' sovereign immunity defense. *Id.* The court, therefore, remanded the case to Judge Randa to determine whether the waivers contained in the offering documents "when read separately or together, ought to be construed as dependent on the validity of the waiver in the Indenture and [whether these documents] . . . make clear the Corporation's intent to render itself amenable to suit for legal and equitable claims in connection with the bond transaction." *Id.* at 701.

Before that issue could be resolved on remand, Wells Fargo was required to address what the Seventh Circuit flagged as another, "more fundamental" issue: "the standing of Wells Fargo to seek the return of the funds to the bondholders" once the Indenture is found void. *Wells Fargo*, 658 F.3d at 701. After failed attempts to avoid the standing issue by adding Saybrook and LDF as plaintiffs, Wells Fargo voluntarily dismissed its suit pursuant to Federal Rule of Civil Procedure 41(a)(1). Saybrook and LDF then immediately filed a 24-count complaint in Waukesha County Circuit Court against Lake of the Torches, Stifel Nicolaus and its parent, Stifel Financial Corp. ("Stifel Financial"), and Godfrey & Kahn. (Dkt. #32, ex. E.) The plaintiffs asserted a breach of

bond claim against Lake of the Torches, and various alternative claims for misrepresentation, securities fraud, malpractice and equitable rescission -- essentially the same complaint now filed in this new federal case.  Because the ability to proceed in state court hinges on waiver of sovereign immunity, which in turn hinges on whether this court has jurisdiction, the state court stayed those proceedings and awaits this court's decision to accept or decline jurisdiction over the dispute.


OPINION

**A.  "Breach of Bond" Claim**

    **1.  Well-Pleaded Complaint Rule**

Article III, section 2 of the Constitution and 28 U.S.C. § 1331 provide federal district courts with jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States."  A cause of action arises under federal law only when federal law is part of the plaintiff's "well-pleaded complaint."  *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).  This means that the court looks only at the complaint, not at asserted defenses, *Gully v. First Nat'l. Bank*, 299 U.S. 109, 113 (1936), or at counterclaims, *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002).  It also means that the court refers only to the portions of the complaint that are necessary for a plaintiff's cause of action, and not at pleadings that merely anticipate a defense.  *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 153 (1908).

    A federal court may only exercise federal question jurisdiction if the "well-pleaded" federal issue is substantial and central to the case.  This threshold is automatically met if

the suit pleads a cause of action arising under federal law. *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). When state law is the underlying basis for the substantive claim, the United States Supreme Court has recognized a substantial and central federal question may still exist provided that: (1) the cause of action necessarily raises a federal issue; (2) the issue is actually disputed; (3) the issue is substantial; and (4) federal jurisdiction will not disturb any congressionally-approved balance of federal and state judicial responsibilities. *Grable & Sons Metal Prod's v. Darue Eng'g*, 545 U.S. 308, 314 (2005).

The Supreme Court offered some further clarification to the latter, rather ambiguous four-part test by explaining that this "special and small category" of qualifying cases must closely resemble the claim in *Grable*, presenting a "nearly 'pure issue of law,'" that is "both dispositive of the case and would be controlling in numerous other cases." *Empire Healthchoice Assurance., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006). More recently, the Court acknowledged that in "outlining the contours of this slim category . . . the canvas looks like one that Jackson Pollock got to first." *Gunn v. Minton*, 568 U.S. __, 2013 WL 610193, at *5 (2013) (citing 130 C. Wright, A. Miller, E. Cooper & R. Freer, Federal Practice and Procedure § 3562, pp. 175-76 (3d ed. 2008)).

On the face of the pleading here, plaintiffs' claim against Lake of the Torches for "breach" of the $50 million in bonds is unambiguously one for breach of contract under Wisconsin common law, requiring plaintiffs to show the existence of a valid contract and an unwarranted breach. Indeed, defendant Lake of the Torches underscores the nature of the claim by arguing that plaintiffs will have to prove that the contract is not void

6

under IGRA:  since it is actually *defendants* who must raise IGRA as an affirmative defense and, therefore, carry the burden of proof under Wisconsin law.  *Capitol Indem. Corp. v. St. Paul Fire & Marine Ins. Co.*, 357 F. Supp. 399, 410 (W.D. Wis. 1972) ("the burden of establishing an affirmative defense rests upon the defendant").

Accordingly, rebutting IGRA is not part of the cause of action itself.  Since it is by now well-settled federal law that contract invalidity is a defense, and that the defeat of potential invalidity defenses is not an element of an affirmative claim, further elaboration on this point is unnecessary.  *See Louisville & Nashville R.R. Co.*, 211 U.S. at 152.  See also *Iowa Mgmt & Consultants, Inc. v. Sac & Fox Tribe of Miss. in Iowa*, 207 F.3d 488, 489 (8th Cir. 2000) (holding under the well-pleaded complaint rule that a plaintiff's "anticipatory contention that [a] Tribe may invoke the provisions of IGRA as a defense is insufficient to confer federal question jurisdiction").

### 2.  Complete Preemption Doctrine

For similar reasons, the court also rejects Lake of the Torches' argument that this case falls within the scope of the doctrine of complete preemption.  Established by *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557 (1968), and substantially clarified by *Beneficial National Bank v. Anderson*, 539 U.S. 1, 10-11 (2003), the modern doctrine of complete preemption rests on the notion that federal law provides the exclusive cause of action for claims in certain areas of law, *not just as a matter of substantive law* (applicable when "ordinary" preemption is raised as a defense to a state law claim) *but at the outset, as a matter of federal question jurisdiction*.  An essential

element of complete preemption is the existence of a federal cause of action that displaces the plaintiff's well-pled state law claim. *Id.* at 8. Because IGRA creates no cause of action -- let alone the only cause of action -- in which to bring a breach of contract claim against tribes or tribal entities (unlike, for example, § 301 of the LMRA, which completely preempts because it makes federal law the exclusive avenue for suits "for violation of contracts between an employer and a labor organization"), there is not complete preemption here.

Admittedly, the scope of the complete preemption doctrine was clouded for many years, with some courts and commentators suggesting that comprehensive federal occupation of a field of law is all it takes to federalize state law claims intersecting the occupied field. *See generally* Gil Seinfeld, *The Puzzle of Complete Preemption*, 155 U. Pa. L. Rev. 537, 548-52 & n.50 (2007). But this notion was largely dispelled by the Supreme Court in *Beneficial National Bank,* which held that preemption exists "[o]nly if Congress intended [a federal law] to provide the exclusive cause of action for [a particular type of] claim[]." 539 U.S. at 9. Commentators and, more importantly for this court, the Seventh Circuit recognize that complete preemption must flow from a federal cause of action that permits no parallel state claim. *Id.*; *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.,* No. 12–2037, 2013 WL 646051, at *8 (7th Cir. Feb. 22, 2013) ("Complete preemption exists when federal law provides 'the exclusive cause of action' for claims in a regulated area." (quoting *Beneficial Nat'l Bank*)).

Lake of the Torches cites *Wells Fargo Bank, N.A. v. Sokaogon Chippewa Cmty. (Mole Lake Band of Lake Superior Chippewa Indians)*, 787 F. Supp. 2d 867 (E.D. Wis. 2011), for

the proposition that IGRA displaces the breach of contract claim in this case.  But this overstates the decision's import here.  Certainly, the facts are very similar to this case: the complaint in *Sokaogon* asserted claims for:  (1) breach of bonds issued by the tribe; and (2) breach of an indenture and guaranty signed by Sokaogon Gaming Enterprise Corporation, the business arm of the tribe.  *Id.* at 872-73.  While none of these claims raised a federal question outright, the court decided that there was federal question jurisdiction because "IGRA completely preempts state law with respect to Indian gaming."  *Id.* at 875 (quoting *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 547 (8th Cir. 1996)).  This court agrees with that statement in isolation, but disagrees that complete preemption of Indian gaming *regulation* also means complete preemption of claims sounding in common law breach of contract, quasi-contract or equity simply because they happen to intersect, however tangentially, with Indian gaming activity.

The line of cases relied upon in the *Sokaogon* decision begins with *Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir. 1996), which examined "the text and structure of IGRA, its legislative history, and its jurisdictional framework" and found that Congress intended to preempt state regulation of Indian gaming completely.  *Id.* at 546. The decision then found that "the scope of IGRA's [complete] preemption" should include any cause of action under state law "which would [in practice] interfere with the [tribe's] ability to govern gaming."  *Id.* at 550.  Applying this definition, the Eighth Circuit then considered the possible preemption of state common law claims for breach of fiduciary duty and tortious interference with contract, which were asserted by a private casino operator against a law firm for advising a tribe not to award the operator a gaming

9

license.  Although these common law causes of action were not intrinsically connected to tribal gaming, the court of appeals held that "[a]ny claims based on [the law firm's] duty to the [tribe] during the licensing process would appear to fall within the scope of IGRA's complete preemption."

This holding now appears to be inconsistent with the Supreme Court's later holding in *Beneficial National Bank* because there is no cause of action under IGRA analogous to the breach of fiduciary duty and tortious interference with contract claims brought by the plaintiff such that "a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank*, 539 U.S. at 8.  Similarly, there would appear to be no such complete preemption in *Mole Lake*.  Of all the state law claims in *Mole Lake*, the one most deeply embedded into the federal regulatory scheme was the claim for breach of the indenture, which admittedly was a heavily-regulated casino "management contract" under IGRA. Crucially, however, there is no cause of action under IGRA that could have (let alone *must* have) been brought in lieu of the state law breach of contract claim.  There was thus no displacement of that claim by federal law.

## B. Plaintiffs' Other State Claims

In addition to their attempt to enforce the bonds under state contract law, plaintiffs have articulated several other claims in the alternative, asking for relief in the event that the bonds prove unenforceable.  Many of these alternative claims also present the possibility of federal jurisdiction under the well-pleaded complaint rule.  For example,

plaintiffs have alleged that Lake of the Torches fraudulently "represented that no approval of the [National Indian Gaming Commission] was 'required for the valid and lawful execution and delivery by [Lake of the Torches] of . . . the Indenture and the assumption by [Lake of the Torches] of its obligations hereunder and thereunder.'"[3] (Compl. dkt. #1, Count IV, at ¶120.)   Plaintiffs have asserted nearly identical claims against Stifel Nicolaus and Stifel Financial.   Since one element of this cause of action is an alleged misrepresentation of law, plaintiffs must affirmatively establish that the Indenture is invalid.   Thus, a question of federal law -- whether the Indenture is invalid under IGRA -- *is* part of several of plaintiffs' well-pleaded state law causes of action.

Recall from *Grable,* however, that a well-pleaded federal "issue" is only considered a federal "question" when (1) the federal issue is actually disputed and substantial; and (2) federal jurisdiction will not disturb any congressionally-approved balance of federal and state judicial responsibilities.   *Grable & Sons Metal Prod's,* 545 U.S. at 314.   The federal issues that are implicated in plaintiffs' alternative claims are not federal "questions" under *Grable,* because they are largely undisputed and, even if disputed, are insubstantial in relation to the number of purely state law issues involved.

There appear to be three federal law "issues" that are arguably relevant to at least some of plaintiffs' alternative claims: (1) the enforceability of the Indenture under IGRA, (2) the enforceability of the bonds under IGRA, and (3) the enforceability of other bond offering documents that fall somewhere in the middle (having some, but not all, of the

---

[3] While this language is from one of plaintiffs' securities fraud claims (Counts IV, XII and XVIII), many of the other claims are similar in seeking to establish that the Indenture and bonds are unenforceable under federal law.

characteristics of "management contracts" under IGRA).  Judging from the parties' briefs,

neither side disputes that the Indenture is invalid, nor that the bonds are valid, because

these issues were effectively, if not definitively, settled by the Seventh Circuit Court of

Appeals in *Wells Fargo*.[4]

The only truly disputed question is whether the other offering documents are valid

and enforceable under IGRA.  This matter is specifically identified as a disputed issue in

¶ 53 of plaintiffs' complaint, which states:

> The legal proceedings to date have invalidated the Indenture
> and created uncertainty about the validity of other
> documents associated with the sale of the Bonds. Some of the
> other agreements contain some, but not all, of the provisions
> found by the District Court and the Seventh Circuit to be
> indicia of management contracts for Indian gaming facilities.
> These documents were drafted by Defendants, and
> uncertainty surrounding the status of the documents has
> injured Saybrook.

(Compl., dkt. #1, at ¶53.)

This issue is not, however, "substantial" enough to create federal question

jurisdiction.  The legal issues that will decide whether plaintiffs' claims proceed against

Lake of the Torches, or whether plaintiffs direct the full force of their attack toward

---

[4] The only party that seems somewhat likely to raise a dispute about the validity of the
bonds is Lake of the Torches, but it has already lost this argument in *Wells Fargo*.  There,
the Seventh Circuit adopted the Second Circuit's position that a contract does not
deserve the label "management contract" if its terms merely refer to a separate contract
containing casino management provisions.  *Wells Fargo*, 658 F.3d at 700-01.  It then
recognized that because the bonds and similar collateral agreements did not directly
contain any management provisions, but merely referred to the Indenture, they were not
management contracts and could not be void for failure to comply with IGRA's
management contract requirements.  *Id.* at 701.  After determining that the Indenture
was void under IGRA, but that the bonds were not, the circuit court remanded to Judge
Randa to determine -- under state law -- if the bonds could stand on their own without
the Indenture.  *Id.*

defendants Stifel Nicolaus, Stifel Financial and Godfrey & Kahn, are questions of state law already identified by the Seventh Circuit:  whether the waivers of sovereign immunity set forth in the bonds themselves are enforceable, such that plaintiffs can proceed on their breach of bond claims against Lake of the Torches, or are unenforceable as inseparable from the now-void Trust Indenture.  *Wells Fargo*, 658 F.3d at 701.  Even if some of the other, associated documents are found to be void under IGRA, plaintiffs' bond-related contractual and equitable claims against Lake of the Torches may proceed if enforceable under state law.

The Supreme Court has described the *Grable* category of federal question jurisdiction as "special," "small," and "slim," applicable only where resolution of the federal issue is not "fact-bound" and "situation-specific."  *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699, 701 (2006).  Given that the question of whether the other offering documents are "management contracts" under IGRA is *both* fact-bound and situation-specific, and given that the other federal issues here are *both* raised as affirmative defenses and essentially undisputed, the court concludes that plaintiffs' claims do not create federal question jurisdiction.  *See Gunn*, 568 U.S. at __, 2013 WL 610193, at *6  (state law claim alleging legal malpractice in the handling of a patent case does not give rise to federal jurisdiction, although proving error with respect to federal patent law issues is an element of the malpractice claim).

### C.  Diversity Jurisdiction -- 42 U.S.C. § 1332

Plaintiffs allege that diversity jurisdiction does not exist because at least one plaintiff and at least one defendant is a Wisconsin "citizen" for diversity purposes.  It is undisputed that defendant Godfrey & Kahn, a service corporation organized under Wisconsin law, is a citizen of Wisconsin for diversity purposes, *Saecker v. Thorie*, 234 F.3d 1010, 1012-13 (7th Cir. 2000), as is Lake of the Torches, a corporation chartered in Wisconsin under Native American tribal law, *Wells Fargo Bank*, 658 F.3d at 694 (7th Cir. 2011).

Plaintiffs' citizenship, on the other hand, is less clear.  The complaint alleges that LDF Acquisition, a limited liability corporation, is a citizen of Wisconsin because one of its members is a Wisconsin citizen.  Plaintiffs have not identified this member, however, let alone shown evidence of his/its citizenship.  Before dismissing this case for lack of jurisdiction, Lake of the Torches asks that plaintiffs be required to submit proof that at least one member of LDF is a Wisconsin citizen.  Given plaintiffs' motivation to prove a *lack* of jurisdiction and the unusual posture of this case, the court will require plaintiffs to submit an affidavit or declaration under penalty of perjury of the *specific* basis for asserting LDF Acquisition's Wisconsin citizenship from December 21, 2009, through today.

ORDER

IT IS ORDERED that:

1) this case will be dismissed without prejudice for lack of subject matter jurisdiction, provided plaintiffs submit to the court within 14 days from the date of this order

definitive proof of Wisconsin citizenship of one or more of the members of LDF Acquisition, LLC; or

2) absent such proof, this case shall proceed to a telephonic status conference on April 2, 2013, at 9:00 a.m.


Entered this 11th day of March, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge